IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIFER KELLEY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 15-CV-679-PJC |
| CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff, Jennifer Kelley ("Kelley") seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. For the reasons discussed below, the Commissioner's decision is REVERSED AND REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a

disability claim. 20 C.F.R. § 404.1520.[1]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052  (quotation and citation omitted).  Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

### 1. Background

Kelley was thirty-one years old on the amended alleged date of onset of disability and thirty-six on the date of the Commissioner's final decision. [R. 1, R.192 (Ex. B1D)]. She has a high school education and two years of college. [R. 383 (Ex. B20E)]. She has previous experience in administration support; as an engineering aide and office coordinator in the oil and gas business; as a baker at a grocery store; and in hazardous material administrative support in a transportation business. [R. 383 (Ex. B20E)]. In her application, she claimed to be unable to work as a result of major depression and injuries that make it hard to stand; anxiety; hearing voices; broken right ankle and knee; and arthritis. [R. 382 (Ex. B20E)].

### 2. The ALJ's Decision

In his decision, the ALJ found that Kelley met insured status requirements through June 30, 2013, and, at Step One, that she had not engaged in any substantial gainful activity October 10, 2010, the alleged onset date. [R. 24]. He found at Step Two that Kelley had severe impairments of marijuana abuse and depression. [R. 25]. At Step Three, he found that the impairments did not meet or medically equal any listing. *Id.* He concluded that Kelley had the following residual functional capacity ("RFC"):

> The claimant is limited to simple and some complex tasks (defined as semiskilled work with a specific vocational preparation (SVP) of 3-4). The claimant is unable to have contact with the public. The claimant's contact with coworkers and supervisors should be superficial (defined as brief and cursory contact).
> .

[R. 28]. At Step Four, the ALJ determined that, based on the RFC, the claimant was unable to perform any past relevant work. [R. 32]. At Step Five, he found that, considering Kelley's age, education, work experience and residual functional capacity, there were jobs existing in significant numbers in the national economy that she could perform, including hand packager,

medium exertional, DOT #920.587-018, 17,500 jobs in Oklahoma and 220,000 jobs nationally; assembler, light exertional, DOT #706.684-022, 13,000 jobs in Oklahoma and 180,000 jobs nationally; clerical mailer, sedentary exertional, DOT #209.587-010, 10,000 jobs in Oklahoma and 125,000 jobs nationally; assembler, sedentary exertional, DOT #726.685-066, 7,000 jobs in Oklahoma and 93,000 jobs nationally; and trimmer, sedentary exertional, 6,500 jobs in Oklahoma and 95,000 jobs nationally.  [R. 33].

Accordingly, the ALJ found that Kelley had not been under a disability from October 10, 2010, through the date of the decision.  [R. 34].

### 3. Plaintiff's Allegations

On appeal, Kelley asserts that:  (1) the ALJ failed to address the medical opinion of Peteryne Johnson-Miller, Ph.D.; (2) although the ALJ considered the knee and ankle fractures as non-severe impairments, he failed to consider how they would impact Kelley's ability to work in combination with her other impairments; and (3) the ALJ failed to consider the possibility of a closed period disability despite Kelley's having ankle, then knee fractures consecutively, severely limiting her physically for more than twelve months.

### 4. Analysis

#### Consideration of Johnson-Miller Opinion

Kelley complains that the ALJ failed to consider treating psychiatrist Peteryne Johnson-Miller, M.D.'s opinions regarding her mental condition, and that—had he done so—he would have found her to be disabled.

Dr. Johnson-Miller completed Treating Physician Mental Functional Assessment Questionnaires on Kelley on September 14, 2010, and May 23, 2012, and a Mental Status Form on March 29, 2012.  [R. 497 (Ex. B2F); R. 657, R. 667 (Ex. B10F)].

In the September 14, 2010, questionnaire, the doctor stated that Kelley had Axis I Major Depression, recurrent, moderate and described Kelley's functional limitations as follows:

> Client's lack of motivation in activities that improve mood or would benefit her financially pose a limitation. Client just had her gallbladder removed and is recovering from surgery.

[R. 497].

In the May 23, 2012 questionnaire, she listed Kelley's diagnoses as 296.32 Major Depression, recurrent, moderate; 300.02 Anxiety and 305.20, Cannabis abuse. [R. 667 (Ex. B12F)]. She listed functional limitations as "[d]ifficulty )/with peers, public setting, motivation and also reporting poor memory and focus. Reports and demonstrates these symptoms with and without cannabis usage." *Id.*

In the Mental Status Form completed March 29, 2012, Dr. Johnson-Miller reported Kelley was "Oriented x 3. Fair memory, good attention, poor insight. No hallucinations." [R. 657]. In response to the question, "Can the claimant . . . remember, comprehend and carry out (simple) (complex) instructions on an independent basis," she stated "yes." *Id.* In response to the question, "Can the claimant . . . respond to work pressure, supervision and coworkers?" she stated: "reports anxiety and panic attacks frequently w/wt meds upon impending contact w/public." *Id.*

The Commissioner argues that the ALJ's failure to discuss Dr. Johnson-Miller's reports is harmless. Specifically, references the March 29, 2012, Mental Status Form, and contends that because the doctor's only opinions as to functional limitations (i.e. that Kelley could comprehend and carry out simple or complex instructions on an independent basis and that she experienced anxiety and panic upon impending contact with the public) do not contradict the RFC, which limited her to "simple and some complex tasks," no contact with the public and only superficial contact with coworkers and supervisors. [R. 28, R. 657].

5

The Court agrees with the Commissioner that RFC does not conflict with the functional limitations identified in the Mental Status Form.  However, the ALJ failed to address the functional limitations identified in the two Treating Physician Mental Functional Assessment Questionnaires.  These limitations ("lack of motivation in activities that improve mood or would benefit her financially" and "[d]ifficulty )/with peers, public setting, motivation and also reporting poor memory and focus.  Reports and demonstrates these symptoms with and without cannabis usage") are inconsistent with the RFC.

In general, the Commissioner gives opinions of treating sources more weight, "since these sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2).  "The treating physician's opinion is given particular weight because of his 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'"  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (quoting *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2)).

Furthermore, the ALJ is required to consider all opinions of record, explain how he reached his decisional RFC and explain why or why not any other medical opinions were used.  *See* SSR 96-8p at *7, SSR 96-5p at *2-*3.  As the Tenth Circuit has explained:

> Under Social Security Administration regulations, the opinion of a treating physician concerning the nature and extent of a claimant's disability is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the

> claimant's] case record." 20 C.F.R. § 416.927(d)(2). An ALJ may disregard a treating physician's opinion, however, if it is not so supported. *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir.1994). In all cases, the regulations require that the ALJ "give good reasons" in the notice of determination or opinion for the weight that is given the treating physician's opinion. 20 C.F.R. § 416.927(d)(2). *See Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir.2001) (quotation omitted) (requiring the ALJ to supply "specific, legitimate reasons" for rejecting the opinion of the treating physician).

*Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

The ALJ's failure to explain why he rejected Dr. Johnson-Miller's functional limitation opinions in the Questionnaires is reversible error.

### 5. Conclusion

Because the Court finds that reversal is required based on the ALJ's failure to address Dr. Johnson-Miller's opinions regarding Kelley's functional limitations, the Court does not take a position on Kelley's remaining arguments that the ALJ erred at Step Two in failing to consider her ankle fracture and right knee patellar fracture and erred in failing to consider the possibility of a closed period disability. On remand, however, the Commissioner should ensure that any new decision sufficiently addresses all issues raised by claimant.

Nor does the Court take any position on the merits of Kelley's disability claim, and "[no] particular result" is ordered on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 12-13-14 (10th Cir. 2003), citing *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

For the reasons set forth above, the Commissioner's decision is hereby **REVERSED AND REMANDED.**

ENTERED this 28th day of February, 2017.

_____
Paul J. Cleary
United States Magistrate Judge